IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARTIN J. VAN DEURZEN, #10550-104,  )  <br> ) <br> Plaintiff,  ) <br> ) <br> vs.  ) <br> ) <br> D. SPROUL,  ) <br> ) <br> Defendant.  ) | Case No. 20-cv-00649-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is now before the Court for review of the Second Amended Complaint (Doc. 20) filed by Plaintiff Martin Van Deurzen, an inmate in the custody of the Federal Bureau of Prisons (FBOP) and currently confined at the United States Penitentiary in Marion, Illinois (USP-Marion). Plaintiff alleges that unidentified members of the medical, dental, and psychiatric staff at USP-Marion denied him treatment for his prostate, lumbar spine, dental, and mental health conditions in 2017-18. (*Id.*). More than two years later, Plaintiff filed the Second Amended Complaint seeking an order compelling the warden to ensure appropriate care for these conditions.[1] (*Id.*). As explained in more detail below, the Second Amended Complaint does not survive screening under 28 U.S.C. § 1915A. Because Plaintiff has now had three opportunities to articulate a claim and been unable to do so, this action will be **DISMISSED with prejudice**.

---

[1] Plaintiff's request for relief has been difficult to pin down. In the original Complaint, he sought release from custody, a sentence reduction, and/or money damages. (Doc. 1). In the First Amended Complaint, he requested no relief at all. (Doc. 9). The Second Amended Complaint contained Plaintiff's first request for injunctive relief in this matter, and it did not include a motion or request for interim relief such as a temporary restraining order and/or preliminary injunction. (Doc. 20). He has filed no other motions seeking additional relief during the pending action.

1

**Background**

On July 2, 2020, Plaintiff filed his original Complaint pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), in order to challenge the denial of a motion for compassionate release in another federal judicial district and to challenge the general ineligibility of sex offenders for compassionate release at USP-Marion. (Doc. 1). Admittedly, Plaintiff did not fit the criteria. (*Id*.). He nevertheless requested release from custody, a sentence reduction, and money damages. (*Id*.).

In a screening order entered September 2, 2020, this Court dismissed the original Complaint for lack of jurisdiction over Plaintiff's appeal of another district court's decision to deny his motion for compassionate release. (Doc. 9). The Court also dismissed it for lack of jurisdiction over Plaintiff's related request for release from confinement and/or sentence reduction in a *Bivens* suit. (*Id*.). To the extent Plaintiff intended to challenge any conditions of his confinement at USP-Marion, however, the Court granted him leave to file an amended complaint. (*Id*.).

In his First Amended Complaint filed September 28, 2020, Plaintiff shifted his focus. (Doc. 11). He named USP-Marion's warden in connection with *Bivens* claims arising from inadequate medical, dental, and psychiatric care at the prison. The allegations covered inadequate treatment for prostate cancer (Count 1), cavities (Count 2), suicidal ideations (Count 3), a heart condition (Count 4), and back injuries (Count 5). Plaintiff included no request for relief. (*Id*.).

In a screening order entered December 4, 2020, the Court dismissed the First Amended Complaint for failure to state a claim. (Doc. 14). The Court acknowledged that an Eighth Amendment claim for medical deliberate indifference was not foreclosed by *Bivens* and its progeny at the time, but explained that liability hinged on personal responsibility for a constitutional deprivation, which Plaintiff did not establish. (*Id*. at 2-3) (citing *Green v. Carlson*, 414 U.S. 14 (1980); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Plaintiff named a single

defendant, Warden Sproul, because he was "in charged (sic) of the prison." (Doc. 11, p. 1). However, Plaintiff omitted all reference to this defendant in the statement of his claim. (*Id*. at 6). He identified no other individual(s) who participated in a constitutional deprivation. (*Id*.). Plaintiff instead described the misconduct of "medical," "dental," a "dentist," and a "psych nurse." (*Id*.). The Court could not determine what, if any, involvement the warden had in the denial of the plaintiff's medical, dental, or psychiatric care. (Doc. 14). Further, Plaintiff's omission of all other treaters from the statement of his claim, combined with the lack of any request for relief, provided inadequate support for an underlying constitutional claim. (*Id*. at 7). The Court dismissed the First Amended Complaint for failure to state a claim, but recruited counsel to assist Plaintiff in preparing a Second Amended Complaint. (*Id*.). Following several extensions, Plaintiff filed the Second Amended Complaint.[2]

### **Second Amended Complaint**

Pursuant to 42 U.S.C. § 1983, Plaintiff filed his Second Amended Complaint. (Doc. 20). In it, he seeks an order compelling USP-Marion's warden to ensure appropriate treatment for his prostate, dental, lumbar spine, and mental health conditions.[3] (*Id*.). Plaintiff describes his diagnoses and treatment in 2017-18, as follows:

**A.     Prostate**

When Plaintiff transferred to USP-Marion in December 2017, his PSA levels were elevated to 4.89 ng/mL, and high levels are indicative of cancer. (Doc. 20, ¶ 17). On April 3, 2018, PA Brooks recommended that Plaintiff undergo a PSA level test every six months. (*Id*. at ¶ 18). On

---

[2] The Court notes that the Second Amended Complaint languished in threshold review, through inadvertence, and thanks the parties and counsel for their patience. In the future, counsel and parties are invited—even encouraged—to file a motion for status, regardless of relief sought, if they believe one is necessary. This Court routinely receives and appreciates such motions.
[3] Plaintiff omitted all reference to a heart condition in the Second Amended Complaint.

June 12, 2018, Dr. Randall Pass also made the same recommendation. (*Id*. at ¶ 20). Following PSA testing showing a PSA level of 6.1 and a biopsy, Plaintiff was diagnosed with prostate cancer on August 23, 2018. (*Id*. at ¶ 21).

One week later, Dr. Michael Choi recommended PSA testing every 4-6 months and a prostate biopsy every 15-18 months. (*Id*. at ¶ 22). Dr. Choi explained that Plaintiff's treatment would become "more active," if his "Gleason score" exceeded 7 and his PSA levels exceeded 10. (*Id*.). The doctor also recommended a biopsy in November 2019. (*Id*.). On December 4, 2018, Dr. Pass recommended PSA testing every 4 months. (*Id*. at ¶ 23). Plaintiff states that he "has not received timely PSA testing or prostate biopsies as recommended by his medical providers," but he offers no information about the length of any delays, the outright denial of care, or anyone responsible for either. (*Id*. at ¶ 30).

**B.    Dental**

Plaintiff alleges that he had only minor dental issues before transferring to USP-Marion in December 2017. (*Id*. at ¶ 13). Since then, Plaintiff has submitted numerous requests for dental care "to correct loose teeth, dental pain, cavities and cracked teeth." (*Id*. at ¶ 28). He asserts that these "request[s] have either been ignored or substantial[ly] delay[ed]." (*Id*.). He has had "numerous teeth pulled" at USP-Marion and maintains that earlier care "could have" prevented the loss of these teeth. (*Id*.). He offers no other allegations in support of this claim. (*Id*.).

**C.    Lumbar Spine**

Prior to December 2017, Plaintiff underwent seven separate surgeries to his lumbar spine. (*Id*. at ¶ 16). As of December 2017, he "remained with a significant amount of lumbar spine pain" but "without radicular symptoms (*e.g.* pain, numbness, tingling, weakness, *etc.* in his buttocks and/or lower extremities." (*Id*.). In April 2018, Plaintiff began experiencing pain in his buttocks.

(*Id*. at ¶ 19). When his symptoms worsened, he "requested a second mattress to address his back pain and radicular symptoms, but this care has been denied and ignored." (*Id*. at ¶ 26). No other allegations are set forth in support of this claim. (*Id*.).

D. **Mental Health**

In December 2017, Plaintiff was diagnosed with depression and prescribed Sertraline. (*Id*. at ¶ 15). Since then, his symptoms have worsened. (*Id*. at ¶ 24). Plaintiff "has requested an increase in the dosage of his Sertraline prescription, but this care has been denied and ignored." (*Id*. at ¶¶ 24-25). These are the only allegations offered to support a claim for inadequate mental health treatment at USP-Marion. (*Id*.).

## Section 1915A Review

The Second Amended Complaint is subject to screening under 28 U.S.C. § 1915A, which requires the Court to review prisoner complaints and filter out non-meritorious claims. *See* 2 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## Discussion

Like those before it, the Second Amended Complaint does not survive review under Section 1915A. Section 1983 provides no basis for claims against a federal officer or the federal government. The statute authorizes relief against a *state* actor. *See* 42 U.S.C. § 1983. Warden Sproul is not a state actor. He is a federal official who is sued in his official capacity. Section 1983 provides the plaintiff with no avenue to relief in this context.

Plaintiff would have gained little traction by bringing this action pursuant to *Bivens*. *Bivens* and its progeny provide an implied *damages* remedy against *individual* federal officers for certain

5

Case 3:20-cv-00649-JPG   Document 23   Filed 10/12/22   Page 6 of 9   Page ID #78

constitutional deprivations.  *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).  Plaintiff does not seek money damages, and he does not name any individual federal officers as defendants.  As discussed in more detail below, he also describes no plausible claim for a constitutional deprivation, so *Bivens* provides him with no relief.

The Federal Tort Claims Act, 28 U.S.C. 1346, 2671-80, offers no avenue to relief either.  The FTCA authorizes "civil actions on claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  The statute provides jurisdiction for suits against the United States for torts committed by federal officials.  However, Plaintiff did not invoke the FTCA, he did not name the United States as a defendant, and he does not seek money damages.

The Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, provides individuals who are adversely impacted by a final federal agency decision with a means of seeking judicial review of the decision.  5 U.S.C. § 702.  The Seventh Circuit has held that an individual prisoner can rely on the APA to request a court order compelling medical treatment.  *Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) (noting that inmate could use APA to challenge FBOP guidelines related to specific treatment for a condition); *Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002) (no official capacity suit under *Bivens*, but prisoner could attempt APA claim).  With that said, Plaintiff does not challenge any FBOP guidelines for treatment of a particular condition under the APA.  In fact, he has not invoked the APA at all.

Finally, Plaintiff's request for injunctive relief under the Eighth Amendment does not survive screening under any scenario.  The Eighth Amendment prohibits cruel and unusual punishment of convicted persons.  It is well settled that "deliberate indifference to serious medical

constitutional deprivations.  *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).  Plaintiff does not seek money damages, and he does not name any individual federal officers as defendants.  As discussed in more detail below, he also describes no plausible claim for a constitutional deprivation, so *Bivens* provides him with no relief.

The Federal Tort Claims Act, 28 U.S.C. 1346, 2671-80, offers no avenue to relief either.  The FTCA authorizes "civil actions on claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  The statute provides jurisdiction for suits against the United States for torts committed by federal officials.  However, Plaintiff did not invoke the FTCA, he did not name the United States as a defendant, and he does not seek money damages.

The Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, provides individuals who are adversely impacted by a final federal agency decision with a means of seeking judicial review of the decision.  5 U.S.C. § 702.  The Seventh Circuit has held that an individual prisoner can rely on the APA to request a court order compelling medical treatment.  *Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) (noting that inmate could use APA to challenge FBOP guidelines related to specific treatment for a condition); *Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002) (no official capacity suit under *Bivens*, but prisoner could attempt APA claim).  With that said, Plaintiff does not challenge any FBOP guidelines for treatment of a particular condition under the APA.  In fact, he has not invoked the APA at all.

Finally, Plaintiff's request for injunctive relief under the Eighth Amendment does not survive screening under any scenario.  The Eighth Amendment prohibits cruel and unusual punishment of convicted persons.  It is well settled that "deliberate indifference to serious medical

needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  To state a claim, a prisoner must show that he has a medical need that is "sufficiently serious," which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Zentmyer v. Kendall Cnty., Ill.,* 220 F.3d 805, 810 (7th Cir. 2000)) (internal citation omitted).  In addition, the prisoner must show that the defendants responded with deliberate indifference, which occurs when the defendant knew of and disregarded "an excessive risk to inmate health or safety." *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

Even assuming that his medical needs are all sufficiently serious, Plaintiff articulates no plausible claim of deliberate indifference against anyone.  He makes use of passive voice and vague allegations when pleading his claims.  In the process, he fails to identify any particular person who engaged in any misconduct.

In connection with his prostate claim, Plaintiff alleges that he "has not received timely PSA testing or prostate biopsies as recommended by his medical providers."  (*Id*. at ¶ 30).  Although he indicates what various named treaters *have* recommended, Plaintiff offers no other information to support his claim that the same (or different) treaters *have not* followed the treatment recommendations.  The Court cannot tell which providers are to blame for any delay in or denial of treatment.  A disagreement between medical providers or with medical providers about the proper course of treatment is not deliberate indifference.  *See, e.g., Murphy v. Wexford Health Sources, Inc.*, 962 F.3d 911 (7th Cir. 2020) (a medical disagreement over the proper course of treatment is not deliberate indifference); *Cherry v. Alsteen*, 858 F. App'x 189, at *191 (7th Cir.

2021) (quoting *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) ("'Mere disagreement with a doctor's medical judgment' cannot establish an Eighth Amendment violation").

In connection with his dental claim, Plaintiff baldly asserts that he has had "numerous teeth pulled" since December 2017, when earlier care "could have" prevented the loss. (*Id*. at ¶ 28). He fails to identify any particular person he asked for help, when he requested treatment, and what response he received. Plaintiff's allegations support a possible, but not a plausible, Eighth Amendment claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In connection with his lumbar spine claim, Plaintiff states that he "has requested a second mattress to address his back pain and radicular symptoms, but this care has been denied and ignored." (*Id*. at ¶ 26). Again, he offers no indication of when he made this request, to whom he directed the request, or how they responded.

Finally, in connection with his mental health claim, Plaintiff alleges that he "has requested an increase in the dosage of his Sertraline prescription, but this care has been denied and ignored." (*Id*. at ¶¶ 24-25). Plaintiff, once again, offers no indication of when he made this request, to whom he directed the request, or how they responded. His allegations fall far short of stating a plausible claim for an Eighth Amendment violation against anyone. *Twombly*, 550 U.S. at 570.

Having failed to allege a single violation of his rights under the Eighth Amendment, Plaintiff has also fallen short of demonstrating any entitlement to injunctive relief in this action. Because he has had three opportunities to plead a claim in this case, the Court will not grant him further opportunities to amend the complaint. This case shall be closed.

But, Plaintiff is not without recourse. If he would like to bring a new suit for money damages or injunctive relief against individual federal officers who have denied him medical care, he is not precluded from filing a *separate* suit pursuant to *Bivens* and/or 28 U.S.C. § 1331. If he

wishes to pursue monetary relief against the United States for the tortious misconduct of federal agents, he is not precluded from filing a complaint under the FTCA. And, if he wishes to challenge a final federal agency decision about his medical treatment for one of these conditions, he may bring suit seeking injunctive relief pursuant to the Administrative Procedures Act. With that said, Plaintiff must first exhaust his available administrative remedies in compliance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e, *before* bringing suit, and he must comply with the applicable statute of limitations for each of these claims.

## Disposition

**IT IS ORDERED** that the Second Amended Complaint (Doc. 20) is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Because Plaintiff has received three opportunities to articulate a claim in this case without doing so, the Court will not give him another opportunity to amend. This action is **DISMISSED with prejudice**.

The Court thanks Attorney James M. Ruppert and Hassakis & Hassakis, P.C., for serving as Plaintiff's counsel in this case. The Clerk's Office is **DIRECTED** to **TERMINATE** Attorney Ruppert, with Hassakis & Hassakis, P.C., as counsel for Plaintiff.

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: 10/12/2022**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**